UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-cv-24266-MARTINEZ/GOODMAN

WIND CONDOMINIUM ASSOCIATION,
INC., a Florida condominium association; and,
LATITUDE ON THE RIVER
CONDOMINIUM ASSOCIATION, INC., a
Florida condominium association,

Plaintiffs,

v.                                                          **CLASS ACTION**

ALLIED TUBE & CONDUIT
CORPORATION, a Delaware corporation;
TYCO INTERNATIONAL PLC, f/k/a TYCO
INTERNATIONAL, LTD., a foreign  limited
company; TYCO FIRE PRODUCTS, LP, a
Delaware limited partnership; LUBRIZOL
ADVANCED MATERIALS, INC., f/k/a
NOVEON, INC. a Delaware corporation; THE
LUBRIZOL CORPORATION, an Ohio
corporation; THE VIKING CORPORATION, a
Michigan corporation;  SUPPLY NETWORK,
INC., a/k/a VIKING SUPPLYNET, a Michigan
corporation; VICTAULIC COMPANY, a New
Jersey company, GEORG FISCHEL HARVEL
LLC, a Pennsylvania limited liability company;
NIBCO INC., an Indiana corporation;  SPEARS
MANUFACTURING CO., a California
corporation; ATKORE INTERNATIONAL,
INC., f/n/a Tyco International Ltd. Electrical &
Metal Products division, a Delaware
corporation; HD SUPPLY WATERWORKS
GROUP, INC., a Delaware company; HD
SUPPLY WATERWORKS, LTD., a Florida
Limited Company;
                         Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT TYCO INTERNATIONAL PLC'S
MOTION TO DISMISS [D.E. 96]**

1

## I.    Background & Introduction[1]

Defendant Tyco International, plc ("Tyco plc") seeks to insulate itself from the acts and omissions of its predecessor entity, Tyco International, Ltd. ("Tyco Ltd."). Tyco plc would like to have the Court examine this case in a vacuum and ignore the fact that Tyco plc was the predecessor entity of Tyco Ltd., Nowhere in its affidavits supporting its Motion to Dismiss does Tyco plc state it did not assume the assets and liabilities of Tyco Ltd. D.E. 96-2. Tyco plc's own 10-K states the change from Tyco Ltd. to Tyco plc "was a change of jurisdiction of incorporation from Switzerland to Ireland by merging with its subsidiary, Tyco International plc, a public limited company incorporated under the laws of Ireland." Ex. A, attached hereto at 6. In short, the change from Tyco Ltd. to Tyco plc, was nothing more than a name change and change in jurisdiction of incorporation. *Id.* Florida law, as set forth herein, does not allow Tyco plc to escape its predecessor Tyco Ltd.'s liability merely by changing its name and place of incorporation. *See Bernard v. Kee Mfg. Co.,* 409 So.2d 1047, 1049 (Fla. 1982)[2]; *BCE Development Properties, Inc. v. Aero Exchange,* 538 So.2d 529, 530 (Fla. 4th DCA 1989).

Jurisdiction over Tyco plc arises from its predecessor entity, Tyco Ltd.'s agency relationships and assumptions of liability that Tyco Ltd. had with Defendants Tyco Fire Products, L.P., Allied Tube & Conduit Corp., and Atkore International. See D.E. 111. at p.2. Plaintiffs' pleadings of the agency relationship between Tyco plc and Defendants Tyco Fire Products, L.P., Allied Tube & Conduit Corp., and Atkore International, fall squarely within Florida's Long-Arm statute section 48.193(1)(a)(1-2) because via the aforementioned agents and contractual assumptions of liabilities to wit, Tyco Ltd.: a) operated, conducted, engaged or carried on a business venture in the State of Florida, *see* Fla. Stat. §48.193(1)(a)(1); b) committed a tortious act within the State of Florida, *see* Fla. Stat. §48.193(1)(a)(2). Tyco Ltd.'s acts and omissions outside the State of Florida via its CPVC and Allied pipe caused injury to people and property in the State of Florida, which is also a basis for jurisdiction under Florida's

---

[1] In addition, Plaintiffs adopt and incorporate by reference their Introduction section of their briefing in this case previously filed at D.E. 109.

[2] Under *Bernard,* a successor company like Tyco plc, may be held liable for the acts of its predecessor company when: "(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." As set forth herein, Plaintiffs have showed one or more of factors 1-3 above exist. Nonetheless, such proof is not necessary at this stage for jurisdictional purposes.

Long-Arm statute. Fla. Stat. §48.193(6)(a) or (b). Significantly, none of Tyco Ltd.'s agents in this case, Defendants Tyco Fire and Allied Tube contest that they are subject to jurisdiction in the State of Florida. Even if the Court found Plaintiffs' did not meet their burden, which they do, the disputed pleadings and affidavits would require further jurisdictional discovery as to Tyco plc and Tyco Ltd.. *Gleneagle Ship Mgmt. Co. v. Leondakos,* 602 So.2d 1282, 1284 (Fla. 1992)(adopting federal court's practice of allowing jurisdictional discovery when determining whether jurisdiction exists); *Teva Pharmaceutical Indus. v. Ruiz,* 181 So.3d 513, 518 (Fla. 2d DCA 2015)(allowing both discovery and an evidentiary hearing when there was a factual dispute regarding jurisdiction).

Tyco plc disputes it was properly served. Plaintiffs properly served Tyco plc pursuant to Federal Rule of Civil Procedure 4(h)(1)(B) by delivering a copy of the summons and complaint to "a managing or general agent." Plaintiffs served Tyco plc in its "management office in the United States" at 9 Roszel Road, Princeton, New Jersey, 08540. Tyco plc's 10-K filing states that the Princeton address is its "management office." Ex. A, at 6. Not coincidentally, Tyco plc's lists the same Princeton address as its mailing address with the SEC. Ex. B at 2. Tyco plc should not be allowed to accept its mail in the United States at the Princeton address, yet not accept service of process. In an abundance of caution, Plaintiffs have filed a motion to authorize service of process upon Tyco plc as an international defendant and for appointment of an international process server in accordance with the Hague Convention. D.E. 129.

## II. The agency relationships and contractual assumptions of liability between Defendants Tyco plc, Tyco Ltd., Allied Tube & Conduit Corp., Tyco Fire Products, L.P. and Atkore International.

Defendant Allied is a manufacturer and supplier of ABF metal piping in Plaintiffs' buildings and a wholly owned and controlled subsidiary of Tyco, Ltd.. A.C.[3] at ¶19-20. From at least 2005-2010, Allied was a wholly owned and controlled subsidiary of Tyco Ltd.[4]

Defendant Atkore's relationship with Tyco and Allied is set forth in detail at paragraphs 76-80 of the A.C.. But in summary, Tyco International Ltd. Electrical and Metal Products (sometimes referred to as "TEMP") was a business segment of Tyco Ltd.. Ex. C at 7; Ex. D at 7-8. In 2007-2010 Tyco Ltd. started listing Defendant Allied under its Electrical and Metal

---

[3] "A.C." shall hereinafter mean "Amended Complaint.
[4] Exhibits J-O. Each exhibit is Exhibit 21.1 to Tyco Ltd.'s 10-K filings listing its subsidiaries from 2005-2010.

Products division as a "Key Brand."  Ex. F-I at 1. In 2010, Tyco Ltd. spun off a portion of the Electrical and Mechanical Products division and formed Defendant Atkore International. A.C. at ¶76-78; Ex. P. Atkore's partial acquisition of TEMP included as an asset the defective ABF steel piping. *Id.* at ¶77-78. Defendant Allied is a subsidiary of Atkore. *Id.* at ¶80. In summary, three Defendants that were agents of Tyco Ltd. or that Tyco Ltd. had contractual responsibility for: Allied, Tyco Fire and Atkore, were responsible for manufacturing, design and supply of the ABF metal piping and the distribution and supply of the CPVC pipe during the relevant time period. As of November 17, 2014, Tyco Ltd. changed its name to Tyco plc. Ex. A; A.C. ¶22. Yet the name change does nothing to absolve Tyco plc of liability due to the acts of its predecessor, Tyco Ltd.'s, agents and Tyco Ltd.'s contractual assumptions of liabilities of Allied.

Defendant Tyco Fire Products, L.P. ("Tyco Fire") was also subsidiary of Tyco.[5] A.C. at ¶29. Tyco Fire was a manufacturer, designer, distributor and supplier of Blazemaster CPVC and also ABF metal pipes. *Id.* at 30.

### III.    Tyco Ltd. had control or right of control over Defendants Allied and Tyco Fire as its subsidiaries.

Tyco Ltd. was a multibillion[6] worldwide conglomerate with anywhere from 38,000 to 89,000 employees in the United States at a given time. Exhs. D, F-I. Tyco Ltd.'s business model was simple, it conducted business "through its subsidiaries." Exhs. C-D and F-H, all at p.1. Two of those subsidiaries are Defendants Tyco Fire and Allied. Exhs. J-O, listing of Tyco Ltd.'s subsidiaries from 10-K annual reports from 2005-2010. Tyco Ltd. owned or controlled all the subsidiaries listed on Exhs. J-O, including Defendants Tyco Fire and Allied. In Tyco Ltd.'s Consolidated Financial Statements in its 10-K reports Tyco Ltd. states:

> **Tyco[7] is a holding company which conducts business through its operating subsidiaries**. The Company is a global, diversified company that provides products and services in four business segments: Fire and Security, Electronics, Healthcare and Engineered Products and Services (see Note 22). **The Company[8] consolidates companies in which it owns or controls more than**

---

[5] Exhs. J-O.
[6] Exhs. D, F-I.
[7] In all of its 10-K filings, "Tyco," "we" or the "Company" means Tyco International Ltd. Exhs. C, D, F-H.
[8] *Id.*

> **fifty percent of the voting shares. Also, the Company consolidates variable interest entities in which the Company bears a majority of the risk to the entities' potential losses or stands to gain from a majority of the entities' expected returns. All significant intercompany transactions[9] have been eliminated…**

Exhs. C, D, F-I at "Notes to Consolidated Financial Statements" in each 10-K. (E.s). Accordingly, Tyco Ltd. reported and consolidated the financials of the subsidiaries it **controlled** more than fifty percent of the voting shares of in its Annual Reports. From 2005-2010, Defendants Allied and Tyco Fire were listed as a subsidiaries to Tyco Ltd. in Tyco Ltd.'s 10-Ks; therefore, Tyco Ltd. owned or controlled more than fifty percent of the voting shares of Defendants Allied and Tyco Fire, making them agents of Tyco Ltd. In fact, Tyco Ltd. owned and controlled 100% of its subsidiaries Defendants Allied and Tyco Fire. This fact is borne out in each "Exhibit 21.1" appended to Tyco Ltd.'s annual 10-K filings from 2005-2010, attached hereto as Exhibits J-O. In each Exhibit 21.1, Tyco Ltd. lists its subsidiaries. Only when Tyco Ltd. does **not** own one hundred percent and control as subsidiary does it say so in Exhibit 21.1 each 10-K. For example in 2005, Defendants Allied Tube & Conduit Corporation and Tyco Fire Products LP are listed at pages 47 and 55, respectively. Ex. C. On page 47 of Exhibit C where Defendant Allied is listed, another entity, C.S. Global Sentinel, L.P. is listed with a notation "(55%)." A review of all the Exhibits 21.1 to Tyco Ltd.'s 10-Ks shows the same reporting format. Exhs. J-O. In other words, Tyco Ltd. did not list a percentage by Defendants Allied and Tyco Fire because it owns and controls 100% of both Allied and Tyco Fire. Thus, there can be no doubt that Tyco Ltd. had control or right of control of Defendants Tyco Fire and Allied making Defendants Tyco Fire and Allied agents of Tyco Ltd. under Florida law.

> **a. Fire sprinkler systems and metal piping made by Defendant Allied were major portions of Tyco Ltd.'s business that Tyco Ltd. operated or controlled.**

In each of its 10-K reports from 2005-2010, Tyco Int'l states it did business "through its subsidiaries." *Id.* Tyco Ltd. generally split its subsidiaries into several "operating segments" or "business segments." From year to year the names of the segments and how Tyco Ltd. organized

---

[9] This admission shows that Tyco Ltd. eliminated "significant intercompany" transactions, meaning that Tyco Ltd. smoothed the way for operating its subsidiaries, including Defendants Tyco Fire and Allied, to operate as one conglomerate.

its subsidiaries changed, but the products at issue here from Defendants wholly owned and controlled subsidiaries Allied and Tyco Fire were fire sprinkler systems and metal pipes that were also part of Tyco Ltd.'s "Fire & Building Products" and "TEMP" segments as set forth above. In each of its 10-K reports from 2005-2010, Tyco Ltd. made similar or identical statements regarding its fire sprinkler systems and metal pipe business via its subsidiaries or business segments:

> Tyco Fire & Building Products[10] manufactures and sells a wide variety of products to fire protection contractors and fabricators of fire protection systems. These products include a complete line of fire sprinkler devices[…] plastic pipe....
>
> In North America, a complete line of steel sprinkler pipe is manufactured by Tyco Electrical & Metal Products (Allied Tube & Conduit)[11], thus enabling Tyco to offer a complete line of fire protection systems and services.
>
> Tyco Fire & Building Products sells fire protection products in North America…through a network of company-owned distribution facilities as well as through independent distributors.
>
> In North America, the Allied Tube & Conduit ("Allied")[12] business is the leading manufacturer of steel electrical conduit…

Ex. C at 8; Ex. D at 8.  From 2007-2010, Tyco. Ltd. reported that Defendant Allied Tube was one of its "Key Brands." Ex. F-I at 1. In the 2007-2010 time frame Defendant Allied helped generate up to $2.2 billion per year for Tyco Ltd., and from 8-10 percent of Tyco Ltd.'s revenue. *Id.*  In 2010, Tyco Ltd. sold a portion of its "Electrical and Metal Products" segment which included Defendant Allied. Tyco Ltd. retained an ownership interest and upon information and belief obligations to Allied for these claims. *See* Ex. P. As a result of the 2010 transaction, Defendant Atkore was created, which was formed to hold Tyco Ltd.'s "Electrical and Metal Products" business. *Id.*

> **b.  Tyco plc's current CEO knew of the incompatibility problem between the CPVC and Allied's metal pipe when he was CEO of the Tyco Ltd.'s TEMP division.**

---

[10] A business segment of Tyco Ltd., not a separate corporate entity.
[11] In original.
[12] In original.

Plaintiffs' A.C. details what Defendants Tyco Fire and Allied knew about the compatibility problems between the Allied pipe and CPVC pipe through a string of emails between Allied, Tyco Fire and Lubrizol. A.C. ¶¶115-161. In a related Miami-Dade case, *2711 Hollywood Beach Condo. Assoc. v. TRG Holiday, Ltd.,*[13] undersigned counsel recently filed a motion for leave to amend their complaint to state a claim for punitive damages against the same Defendants here, Tyco Fire and Allied, among others. Ex. E. In the punitive damages motion, plaintiff demonstrated that in 2007-2010, Defendants Allied and Tyco Fire, when they were part of Tyco Ltd. and Tyco Ltd.'s agents, knew of the incompatibility of the CPVC and Allied metal pipe in Florida, and conspired and failed to warn of the problems. A chart of the reports and email communications between Defendants Tyco Fire and Allied is attached hereto as composite Ex. Q. The highest levels of Tyco Ltd.'s management knew of the problems because from 2007-2010, George Oliver was CEO of Tyco Fire and Building Products and Tyco Electrical and Metal Products ("TEMP"), the two segments of Tyco Ltd. that contained Defendants Tyco Fire and Allied. Ex. S, Dep. R. Bussiere[14] at 113-115. Oliver has been CEO of Tyco Ltd. (now Tyco plc) since 2012. Ex. R. Mr. Bussiere, a general manager at Allied testified that when Tyco Fire and Allied were conducted testing of the incompatibility problem, Oliver knew about it. Ex. S. at 113.

### c. Plaintiffs' pled that Defendants Tyco Fire and Allied committed tors in the State of Florida.

Plaintiffs pled that Tyco Ltd.'s agents, Defendants Tyco Fire and Allied committed torts in the State of Florida. Those allegations are specifically pled, in great detail, at paragraphs 122-134 of the Amended Complaint. Those allegations include as to other building projects in Florida where Defendants Tyco Fire and Allied products were installed and Defendants failed to warn. A.C. at ¶¶133-134. Moreover, Plaintiffs have pled that the same two agents committed torts relating to both buildings in this case, which are located in the State of Florida. *See* A.C.

### d. Florida was home to numerous Tyco Ltd. subsidiaries that Tyco Ltd. owned and controlled and carried on business ventures with in the State of Florida.

---

[13] Case number 13-35751, pending the Eleventh Judicial Circuit in and for Miami-Dade County,
[14] Robert Bussiere, General Manager of Sprinkler Sales & Services for Defendant Allied. *See* Ex.Q.

Plaintiffs have explained how Tyco Ltd. operated through its subsidiaries and accounted for all of the subsidiaries it controlled as part of its consolidated financial statements. In Tyco Ltd.'s SEC filings it disclosed its subsidiaries and their places of incorporation. Tyco Ltd. owned and operated the following Florida based subsidiaries that, like Allied and Tyco Fire were Tyco Ltd.'s agents in Florida:  JMI Engineers, Inc.,[15] KHPC Holding GP,[16] Sensormatic Technology, Inc.,[17] M/A-Com, Inc., Printed Circuits, Inc.,[18] STI Risk Management Co.,[19] Secutron, Inc..[20] Thus, not only did Tyco Ltd. own and control various business ventures in the State of Florida, its contacts were numerous and systematic enough to satisfy Due Process concerns. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

### e.  Headquarters for a significant Tyco Ltd.'s agent, ADT, was located in the State of Florida.

One of Tyco Ltd.'s principal subsidiaries was the security company known as ADT. See Ex. G, 2008 10-K at 1. In 2008 alone, ADT accounted for $8 billion in net revenue to Tyco Ltd. ADT's corporate was headquarters were in Florida. *Eli Lilly and Company v. Tyco Integrated Security, LLC, et al.,* Case No. 13-80371 (S.D. Fla.) at D.E. 190 at 5. ADT's Legal and IT Department was based in Boca Raton, Florida. *Id.* ADT advertised its security services from Boca Raton via its Vice-Presidents in marketing that operated in Florida. *Id.* at 6. ADT's network infrastructure servers were housed in Boca Raton and Jacksonville, Florida. *Id.*

### f.  Courts have found that the activities of Tyco Ltd. in the United States on its own and via its subsidiaries were sufficient for jurisdiction.

ADT's activities in a state have been found to be the basis of specific and general jurisdiction over Tyco Ltd. *Duffer v. Tyco Intern. Ltd.,*2008 WL 4417293 at *4-5 (W.D.Ark. 2008). In *Duffer,* Tyco Ltd. made the same type of boilerplate affidavit language that Tyco plc does here, that it is only a holding company, did no business in the state and that its subsidiaries were independent. *Id.* at 4. The *Duffer* Court rejected Tyco Ltd.'s arguments on jurisdiction finding that: Tyco Ltd. had agreed to personal jurisdiction in any United States District Court in

---

[15] 2005-2007.
[16] 2005.
[17] 2005-2010.
[18] 2005-2006.
[19] 2005-2010.
[20] 2005-2006.

an SEC enforcement action and that ADT had provided security services for federal courts across Arkansas. *Id.* Here, as set forth above, ADT ran its headquarters out of Boca Raton, Florida, advertised and marketed out of Boca Raton and had infrastructure services in Boca Raton and Jacksonville, Florida. Tyco Ltd. has also been found to be subject to general jurisdiction across the United States due to its minimum contacts with the United States. *Hall v. Tyco Int'l. Ltd.,* 223 F.R.D. 219, 228-229 (M.D.NC 2004). In *W.G. Security Prods. Inc. v. Tyco Int'l. Ltd.,* 2006 WL 5671239 at *4 (C.D.CA 2006) specific jurisdiction was found over Tyco Ltd. in California because: "Tyco is a multi-billion dollar company with an international presence. TFS, one of its major divisions, is located in the United States. Products and services bearing Tyco and TFS's name are distributed by its divisions and subsidiaries throughout the state of California." In summary, jurisdiction as to Tyco Ltd. for its actions and that of its agents in the State of Florida has been shown via the purposeful availment of Tyco Ltd. to Florida and its consumers, including Plaintiffs.

IV.    **Plaintiffs have adequately pled and proved for jurisdictional purposes that Tyco plc via its agents and contractual liabilities operated, conducted, engaged or carried on a business venture in the State of Florida. Fla. Stat. §48.193(1)(a)(1).**

Jurisdiction under an agency theory may be established if a plaintiff demonstrates that "'the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity.'" *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002), *quoting* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002). Agency attribution is not limited to the parent-subsidiary context, but rather extends to other affiliate relationships. *See Meier*, 288 F.3d at 1273; *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Control or right of control is the key to finding agency. *Nida Corp.*, 118 F. Supp. 2d at 1227. The factual record and Plaintiffs' pleadings demonstrate that Defendants Tyco Fire and Allied were Tyco Ltd.'s agents. Tyco Ltd. is subject to jurisdiction under Florida Statutes section 48.193(1)(a)(1) because: 1) via Tyco Fire and Allied it conducted business in the State of Florida via their products being in Plaintiffs' buildings and in other buildings in Florida; 2) ADT, another Tyco Ltd. agent, had its headquarters in Boca Raton, Florida, and 3) several other Tyco Ltd. agents were registered to and did business in the State of Florida. *Meyer v. Carnival Corp.,* 938

F.Supp.2d 1251 (S.D. Fla. 2013)(noting that under Florida's Long-Arm statute no presence of officers, lese or agent in the state of Florida is necessary to exercise jurisdiction).

    **V.**    **Plaintiffs have adequately pled and proved for jurisdictional purposes that Tyco plc via its agents committed torts in the State of Florida. Fla. Stat. §48.193(1)(a)(2).**

    To establish jurisdiction under Florida Statutes section 48.193(1)(a)(2) Plaintiffs "must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Commc'n, Corp. v. Network Productions, Inc*., 902 F.2d 829, 857-58 (11th Cir. 1990) (citation and punctuation omitted) ("[i]n our technologically sophisticated world… physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state. The appropriate inquiry is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred"); *Machtinger v. Inertial Airline Services, Inc.* 937 So.2d 730, 734 (Fla. 3d DCA 2006). A defendant's physical presence is not required to "commit a tortious act in Florida." *See Posner v. Essex Ins.*, 178 F.3d at 1216-17; *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1297 n.9 (S.D. Fla. 2009). As set forth herein and in Plaintiffs' Amended Complaint, Tyco Ltd.'s agents, Allied and Tyco Fire committed torts in the State of Florida by manufacturing, selling, designing and failing to warn that when the CPVC and Allied ABF metal pipes were used together they fail and result in substantial life/safety and property damage; therefore, Tyco Ltd. is subject to jurisdiction under Florida Statutes section 48.193(1)(a)(2).

    **VI.**    **Plaintiffs have adequately proved the provisions of Florida Statutes section 48.193(1)(a)(6)(a) and(b) for the Court's jurisdiction over Tyco plc.**

    Florida Statutes section 48.193 provides jurisdiction over a defendant if the defendant or it's agent for any cause of action arising from the following acts:

> Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
> a.   The defendant was engaged in solicitation or service activities within this state; or
> b.   Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

    As set for the herein and in the Amended Complaint, Tyco Ltd., through its agents was "engaged in solicitation or service activities within the state" or the products its agents sold,

including the CPVC and metal pipe, were used or consumed within the State of Florida. Accordingly, jurisdiction is also proper over Tyco plc under Florida Statutes section 48.193(1)(a)(6)(a) or (b), at is a disjunctive test.

### VII.      Jurisdiction over Tyco plc would not violate Due Process.

The "constitutional touchstone" of the inquiry to determine whether a Court may exercise personal jurisdiction is whether the defendant "purposefully established minimum contacts in the forum State." *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108-09 (1987). Jurisdiction may be general or specific.  When a defendant's contacts with the forum are "continuous and systematic," a federal court may exercise "general" jurisdiction over any action brought against that defendant regardless of its relation to the contacts in the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 & 415 (1984).  Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."  *Id.* at 414 n.8; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).  All of the alleged causes of action before this Court arise out of and are related to Tyco Ltd.'s activities via its various business segments, agents and subsidiaries. Tyco plc is the successor to Tyco Ltd.'s actions, assets and liabilities.

In *World-Wide Volkswagen*, the Supreme Court recognized that placing a product into the stream of commerce with knowledge that the product will be used in the forum state is enough to constitute minimum contacts.  *World-Wide Volkswagen*, 444 U.S. at 297-98.  Provided a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," *id.*, a court may properly exercise personal jurisdiction over the defendant.

Even if the defendant does not physically enter a state, the purposeful negotiation of a contract with a business entity in the forum state may subject the defendant to personal jurisdiction within that state.  *Burger King*, 471 U.S. at 472; *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222-23 (1957).  In *Burger King*, a Michigan franchisee negotiated a contract with a Florida franchisor, Burger King.  After the Michigan franchisee breached its agreement with Burger King, the franchisor sued it in federal court in Florida.  "[W]ith respect to interstate contractual obligations," the Supreme Court ruled that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to

11

regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473, *quoting Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950).

In today's modern age, Due Process does not require that the defendant physically enter the forum or know the identity of the ultimate user of the product.  The Supreme Court has recognized that:

> [a]lthough territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476; *see also Asahi*, 480 U.S. at 117 ("A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State and indirectly benefits from the State's laws that regulate and facilitate commercial activity.") (Brennan, J., concurring in part and concurring in the judgment);

Based on the 10-K filings alone, the Court should find that Tyco Ltd. purposefully availed itself to Florida, by owning and controlling the operations of its agents, many of which were registered companies in the State of Florida. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Tyco Ltd.'s agent ADT also had its worldwide headquarters in Florida. Other courts have found that Tyco Ltd.'s subsidiaries' activities were sufficient to hale Tyco Int'l. into court in the forum state. *Duffer,*2008 WL 4417293 at *4-5; *Hall,* 223 F.R.D. at 228-229; and *W.G. Security Prods. Inc.,* 2006 WL 5671239 at *4. Based on Tyco Ltd.'s vast reach into the State of Florida via the Allied and Tyco Fire Defendants' distribution of CPVC and metal pipe to Florida in this case, and ADT's Florida presence alone, there are sufficient minimum where the Tyco Ltd. "should reasonably anticipate being haled into court" in Florida. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### a. Fair play and substantial justice permit the exercise of jurisdiction over Tyco plc.

To determine fundamental fairness, courts examine: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Asahi*, 480 U.S. at 112; *World-Wide Volkswagen*, 444 U.S. at 292; *Irving*, 864 F.2d at 387. The exercise of personal jurisdiction does not affect traditional notions of fair play when there is a nexus between the defendant's conduct and plaintiff's injury. *Id.* It is rare to find that jurisdiction is not met when minimum contacts are shown. *Id.*

Where a non-resident defendant put products into the stream of commerce and those products cause harm to plaintiffs in the forum state, courts have consistently found that the exercise of personal jurisdiction over non-resident defendants does not offend traditional notions of fair play. It is indisputable that there is a nexus between Plaintiffs' injuries and Tyco Ltd.'s conduct. As shown in the emails attached hereto at Ex. Q and the Amended Complaint, the CPVC and metal pipes are defective and cause significant life/safety issues. Florida Plaintiffs and the subclass throughout the State of Florida have a strong interest in obtaining efficient relief for the damages caused to their homes and businesses by the defective fire sprinkler systems. Even though Tyco plc is an Irish company, the Supreme Court has stated that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114-15; *see also Irving*, 864 F.2d at 387; *Hedrick v. Daiko Shoji Co., Ltd., Osaka*, 715 F.2d 1355, 1358 (9th Cir. 1983), *opinion withdrawn in part on other grounds sub nom.*, *Hedrick v. Pine Oak Shipping, S.A.*, 733 F.2d 1335 (9th Cir. 1984); *Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 203 (D.C. Cir. 1981) (personal jurisdiction existed in Washington D.C. over Australian defendants who "arranged for introduction of their wine into the United States stream of commerce with the expectation ... that their products w[ould] be shelved and sold at numerous local outlets in diverse parts of the country."); 2 Moore's Federal Practice 4.41-1[4.1] (1987).

When weighing the interests of the Plaintiffs and thousands of Florida homeowners, businesses and citizens affected by this case against the burden on Tyco plc of defending claims related to damages caused by products it shipped to Florida, Due Process is not offended by this Court's exercise of personal jurisdiction over Tyco plc.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs request that the Court enter an

order denying Defendant's Motion to Dismiss.

Dated: February 29, 2016.

<div style="margin-left:40%">

SIEGFRIED, RIVERA, HYMAN, LERNER,
DE LA TORRE, MARS & SOBEL, P.A.
*Attorneys for Plaintiffs*
201 Alhambra Circle, Suite 1102
Coral Gables, Florida 33134
Phone: (305) 442-3334
Fax: (305) 443-3292
Email:  ahale@srhl-law.com
ssiegfried@srhl-law.com
ssobel@srhl-law.com

By:  /s/ Steven M. Siegfried
Steven M. Siegfried, Esq.
Florida Bar Number: 208851
Stuart Sobel, Esq.
Florida Bar Number:
Alton C. Hale, Jr., Esq.
Florida Bar Number: 987190

COLSON HICKS EIDSON GONZALEZ
MARTINEZ KALBAC & KANE
*Attorneys for Plaintiffs*
255 Alhambra Circle, PH
Coral Gables, Florida 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Email: ervin@colson.com
patrick@colson.com

By: /s/ Ervin A. Gonzalez
Ervin A. Gonzalez, Esq.
Florida Bar Number: 500720
Patrick S. Montoya, Esq.
Florida Bar Number: 524441

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF on February 29, 2016, on all counsel of record on the service list below.

**Eric Stephen Boos**
**Daniel Brandon Rogers**
Shook Hardy and Bacon LLP
201 S Biscayne Blvd Ste 3200
Miami, FL 33131
3053585171
Email: eboos@shb.com
droghers@shb.com


**Fredrick Howard Lebron McClure**
**J. Trumon Phillips**
DLA Piper LLP (US)
100 N. Tampa Street
Suite 2200
Tampa, FL 33602
813-229-2111
Fax: 813-229-1447
Email: fredrick.mcclure@dlapiper.com
trumon.phillips@dlapiper.com

**Harout Jack Samra**
DLA Piper LLP (US)
200 S Biscayne Blvd
Suite 2300
Miami, FL 33131
(305) 423-8534
Fax: (305) 437-8131
Email: harout.samra@dlapiper.com


**Alan Gary Kipnis**
**Jeffrey Brian Shapiro**
**Andrea Cox**
**Steven Myer Appelbaum**
Arnstein & Lehr
200 E Las Olas Boulevard
Suite 1700
Fort Lauderdale, FL 33301
Email: agkipnis@arnstein.com
jbshapiro@arnstein.com
acox@arnstein.com
smappelbaum@arnstein.com

**Anne M. Rodgers**
**Barclay Nicholson**
**Carter W. Dugan**
Norton Rose Fulbright, US, LLP
Fulbright Tower
1301 McKinney
Suite 500
Houston, TX 77010-3095
713-651-5151
Email: anne.rodgers@nortonrosefulbright.com
Barclay.Nicholson@nortonrosefulbright.com
carter.dugan@nortonrosefulbright.com

**Gregory J. Wartman**
Saul Ewing, LLP
1500 Market Street
38th Floor
Philadelphia, PA 19102-2186
215-972-7548
Email: gwartman@saul.com

**Jacob J Liro**
**William Frederick Fink**
Wicker, Smith, O'Hara, McCoy & Ford, P.A.
2800 Ponce De Leon Blvd, Suite 800
Coral Gables, FL 33134
(305)448-3939
Email: jliro@wickersmith.com
wfink@wickersmith.com

**Armando Gustavo Hernandez**
Rumberger, Kirk and Caldwell, PA
80 SW 8th Street Suite 3000
Miami, FL 33130
786-472-0019
Email: ahernandez@rumberger.com
ssarason@rumberger.com

**Adam Alaee**
Foley & Lardner
100 N Tampa Street
Suite 2700 PO Box 3391
Tampa, FL 33601-3391
813-229-2300
Fax: 221-4210
Email: aalaee@foley.com

16

**Andrew Samuel Connell , Jr.**
Litchfield Cavo
600 Corporate Drive
Suite 600
Fort Lauderdale, FL 33334
954-689-3023
Fax: 954-689-3001
Email: connell@litchfieldcavo.com

**David R. Stechow**
Plunkett Cooney
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4000
Email: DStechow@plunkettcooney.com

**Alan Mirelman**
Ringer, Henry, Buckley & Seacord, P.A.
14 East Washington Street
Suite 200
Orlando, FL 32801
407-841-3800
Email: amirelman@ringerhenry.com

**Cindy Duque Bonilla**
WEINBERG WHEELER HUDGINS GUNN DIAL
255 South Orange Avenue Suite 1260
Orlando, FL 32801
407-734-7000
Email: cbonilla@wwhgd.com

**Michael Alan Hornreich**
Weinberg Wheeler Hudgins Gunn Dial
2601 S. Bayshore Dr.
Suite 1500
Miami, FL 33133
(305) 455-4509
Email: mhornreich@wwhgd.com