UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:15-cv-24266-MARTINEZ/GOODMAN

WIND CONDOMINIUM ASSOCIATION,
INC., a Florida condominium association; and,
LATITUDE ON THE RIVER
CONDOMINIUM ASSOCIATION, INC., a
Florida condominium association,

Plaintiffs,

v.                                                              **CLASS ACTION**

ALLIED TUBE & CONDUIT
CORPORATION, a Delaware corporation;
TYCO INTERNATIONAL PLC, f/k/a TYCO
INTERNATIONAL, LTD., a foreign limited
company; TYCO FIRE PRODUCTS, LP, a
Delaware limited partnership; LUBRIZOL
ADVANCED MATERIALS, INC., f/k/a
NOVEON, INC. a Delaware corporation; THE
LUBRIZOL CORPORATION, an Ohio
corporation; THE VIKING CORPORATION, a
Michigan corporation;  SUPPLY NETWORK,
INC., a/k/a VIKING SUPPLYNET, a Michigan
corporation; VICTAULIC COMPANY, a New
Jersey company, GEORG FISCHEL HARVEL
LLC, a Pennsylvania limited liability company;
NIBCO INC., an Indiana corporation;  SPEARS
MANUFACTURING CO., a California
corporation; ATKORE INTERNATIONAL,
INC., f/n/a Tyco International Ltd. Electrical &
Metal Products division, a Delaware
corporation; HD SUPPLY WATERWORKS
GROUP, INC., a Delaware company; HD
SUPPLY WATERWORKS, LTD., a Florida
Limited Company;
                   Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT THE VIKING CORPORATION'S
MOTION TO DISMISS AMENDED COMPLAINT [D.E. 183]**

1

I.   **Background & Legal Standard for Motion to Dismiss**

For the purposes of judicial economy, Plaintiffs adopt and incorporate by reference their Background and Legal Standard for Motion to Dismiss sections previously filed in this case at D.E. 109.

II.   **Plaintiffs' strict liability and negligence claims are not subject to the Economic Loss Rule[1] because the claims concern damage to property other than the defective CPVC pipes, parts and fittings themselves.**

The economic loss rule ("ELR") is fundamentally simple. In products liability cases the ELR bars a cause of action in tort "where there was <u>no personal injury or damage to property other than to the product itself</u>." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos. Inc.,* 110 So. 3d 399, 405 n.5 and 406 (Fla. 2013) (e.s.) (reaffirming the exception to the ELR in products liability cases for "other property" and that ELR did not apply in cases where there was no privity of contract, overruling *Casa Clara Condo. Assoc. v. Charlie Toppino and Sons*, Inc. 620 So.2d 1244 (Fla. 1993)). "Economic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law." *Tiara*, 110 So. 3d at 401. Here, Plaintiffs' harm is above and beyond disappointed economic expectations. The CPVC pipes, parts or fittings are defective by themselves and are damaging "other property." Plaintiffs never expected CPVC pipes, parts or fittings to leak and damage ceilings, damage personal property, cause life/safety issues, cause damage to common areas and its residents' internal condominium units.

a.   **The ELR does not apply because the damages were not contemplated by the parties and are above and beyond disappointed economic expectations.**

Defendant was a designer, manufacturer, wholesaler, distributor, retailer or supplier and in the distributive chain of the defective CPVC pipes, parts and fittings used in the Projects. Am. Compl. ¶45. Plaintiffs do not have a contract with Defendant for the defective CPVC pipes, parts and fittings that Defendant supplied to Plaintiffs' property. Absent a contract, what were the economic expectations of the Plaintiff? This is not a case where Plaintiffs are suing for a

---

[1] Judge John Thornton, of the Eleventh Judicial Circuit for Miami-Dade County recently ruled on motions to dismiss from suppliers and distributors of CPVC and metal pipe in a case brought on the same legal theories as this case that the ELR did not apply to plaintiff's strict liability and negligence claims. Ex. A, attached hereto, 10/6/15 Omnibus Order Denying Motions to Dismiss in the case of *2711 Hollywood Beach Condominium Assoc. v. TRG Holiday Ltd., et al.,* Case no. 13-35751 CA 40.

cracking foundation (*Casa Clara*). The damages caused by the defective CPVC pipes, parts and fittings were not foreseeable by the parties, not contemplated by the parties, and go beyond disappointed economic expectations, evidenced by the absence of a contract between the parties. Because there was no contract, there was no basis of a bargain in contract law where Plaintiffs could have "disappointed economic expectations" and have their recovery limited by ELR. *Casa Clara Condo. Assoc. v. Charlie Toppino and Sons*, Inc. 620 So.2d 1244 (Fla. 1993) that Defendant relies upon is no longer good law. Plaintiffs are not in privity with the Defendant, making ELR inapplicable. Moreover, a contract allows parties to allocate risks based on foreseeable consequences. See *In re Chinese Manufactured Drywall Prod. Litig.*, 680 F.Supp.2d 780, 792-3 (E.D.La. 2010)(analyzing Florida ELR privity decisions)(Judge Fallon's order is attached hereto as Exhibit "B"). Plaintiffs had no opportunity to allocate risks via contractual negotiations. *Id.*

Plaintiffs seek full tort relief based upon an unforeseen and unexpected injury not contemplated by the parties, as opposed to the bargained for benefit that amounts to "disappointed economic expectations." As set forth in *Tiara,* the "basic function of tort law is to shift the burden of loss from the injured plaintiff to one who is at fault … or to one who is better able to bear the loss and prevent its occurrence." *Tiara*, 110 So. 3d at 401. Here, the burden must be shifted to Defendant who is better able to bear the loss than the Plaintiffs and was in a better position to prevent the occurrence in its role as a designer, manufacturer, wholesaler, distributor, retailer or supplier in the distribution chain.

    **b. Plaintiff specifically pled that their claims concern property damage other than the CPVC pipes, parts and fittings themselves.**

In each of Plaintiffs' strict liability and negligence counts are specific allegations that property other than the CPVC pipes, parts and fittings themselves are harmed or will be harmed. Defendant relies upon overruled and highly distinguishable cases in its ELR argument. As noted above, *Casa Clara* is no longer good law and has been superseded by *Tiara*. Defendant principally relies on *Jarmco, Inc. v. Polygard, Inc.*, 668 So.2d 300, 303 (Fla. 4th DCA 1996) and *Tyco Safety Prods. Can. v. Abracon, Corp.,* NO. 08-80604-CIV-MARRA-2008 U.S. Dist. LEXIS 87423, *11 (S.D. Fla. 2008) for the proposition that "other property" means the finished condominium units themselves. In other words, the "product" is the completed building, rather than the component parts, so Plaintiffs do not properly allege that "other property" was damaged. *Id.* Only Defendant's argument ignores the plain wording of Plaintiffs' Amended Complaint.

3

Plaintiffs pled damages to "other property"[2] than the CPVC pipes, parts and fittings in its negligence and strict liability counts and paragraphs 332-333 (negligence) and paragraphs 352-353 (strict liability):

> Paragraphs 332 and 352: As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs and Class Members **have incurred economic damages and are entitled to recover monetary damages for**: replacement/repair of fire suppression systems; **repair replacement of any real property, materials or fixtures damaged as result of the defect; the replacement of damaged Other Property (personal property, furnishings, electronic appliances and household items) as a result of the defect**.
>
> Paragraphs 333 and 353: As a direct and proximate cause of Defendant's acts and omissions, **Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while their buildings are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective Blazemaster CPVC pipe in the building; permanent diminution in value of the home; and other related expenses.**

(E.s). The damages Plaintiffs' pled for "other property" fall outside the ELR. Defendant's Motion to Dismiss must be denied because Plaintiffs have adequately pled damage to "other property" caused by the defective fire sprinkler system. *Tiara,* 110 So. 3d at 406 (reaffirming the exception to the ELR in products liability cases for "other property"). The ELR does not apply in this case because Plaintiffs adequately pled and will prove damages to "other property" caused by this defective fire sprinkler system. *Id.* This alone is sufficient for the denial of the Defendant's Motion to Dismiss for the ELR. Moreover, because the problem presented by the life safety problems puts individuals at physical risk of harm, the exception to the ELR regarding physical injury applies so that the ELR cannot be invoked to defeat this claim. *Tiara,* 110 So. 3d

---

[2] The Florida Supreme Court's characterization of "other property" was not unanimous in *Casa Clara* and the Florida Supreme Court, 20 years later in *Tiara*, receded from its over expansion of the ELR and its characterization of "other property."  Florida's ELR is now limited to "its origin in products liability" as articulated by *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), *Seely v. White Motor Co.*, 403 P.2d 145, 149 (Cal. 1965) and ultimately adopted by the Florida Supreme Court in *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899 (Fla. 1987). *Tiara* at 404.

at 408)(the application of tort law is appropriate when dealing with damages to "other property" and "physical injury" or *risk* thereof).(E.s.).

Furthermore, *Jarmco* and *Abracon*, cited by Defendant are all highly distinguishable. First, none of the plaintiffs in those cases alleged damage to "other property." In *Jarmco,* the damages alleged were only to the boat the defective product, resin, was supposed to seal, not other property. Moreover, there was a contract in *Jarmco* and the Court limited the parties to their contract remedies between two commercial parties. *Jarmco.* 668 So. 2d at 304-05. Finally, the Court's reasoning in *Abracon* was similar to that of *Jarmco*. In *Jarmco,* the parties had a contract and were commercial parties "more than capable of protecting themselves against defective products by bargaining for such protection in their contacts." *Abracon,* 2008 WL 4753728 at n. 5. Here, the damage to "other property" has been alleged and will be proven, the parties are not commercial parties, and no contracts exist between the parties, making the ELR inapplicable and distinguishing *Jarmco* and *Abracon* from the instant case.

The most recent pronouncement from the Florida Supreme Court on ELR was in the case of *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos. Inc.,* 110 So. 3d 399 (Fla. 2013). The Florida Supreme Court squarely addressed ELR making it clear that the Court receded from the line of cases Defendant seeks to highlight, particularly *Casa Clara* "…an examination of the application of the economic loss rule in Florida from its inception to our ruling in *Florida Power* reveals that this Court adhered strictly to the reasoning in *East River and Seely"* i.e., not *Casa Clara.* Before *Tiara*, there were significant decisions that addressed *Casa Clara*. The recently decided Chinese Drywall cases are an example. Eastern District of Louisiana District Court Judge Fallon, sitting in his capacity as an MDL transferee judge applying Florida law and ruling upon motions to dismiss from the distributors, suppliers and builders that supplied or provided Chinese drywall to homeowners held that ELR did not bar homeowners' tort claims. *In re Chinese Manufactured Drywall Prod. Litig.*, 680 F.Supp.2d 780, 792-93 (E.D.La. 2010). Judge Fallon foresaw the confusion over the ELR doctrine due to *Casa Clara,*

> there is reason to question whether *Casa Clara* should be looked to for guidance in the present case. Casa Clara was a 4–3 decision with strongly dissenting opinions from Justice Shaw and Justice Barkett. Justice Shaw, for example, read the plaintiffs' complaints of the crumbling concrete as posing a danger of serious injury which is best addressed under tort law.  On different grounds, Justice Barkett criticized the majority opinion for preventing a

5

> third-party, not in privity of contract, from tort remedies, when injury to that party is foreseeable.

*Id.* The CPVC pipes, parts and fittings' defects go beyond disappointed economic expectations, causing damage to property other than the pipes, parts and fittings themselves which "justifies access to tort remedies." *Id.* at 793. Moreover, the public policy of allowing tort claims for inherently dangerous products (versus products that just do not work) is appropriate to the facts of this case. The Association has alleged the dangerousness of a defect in a life safety system. Am. Compl. ¶¶2, 5, 153, 156. The Allied pipe in combination with the CPVC pipes, parts and fittings involve a hazard to health and property. *Id.* The Products, which are the components of the Life Safety System, in this case are inherently dangerous to the Association and its owners/tenants. Accordingly, Plaintiffs should have access to tort remedies and Defendant's Motion to Dismiss should be denied.

### III. Florida Statutes section 718.111(3) provides the Association standing to sue for "matters of common interest."

Florida Statutes section 718.111(3) is part of Florida's Condominium Act. A full reading of section 718.211(3) shows that it is broadly worded to allow an Association, like Plaintiffs, to bring claims for "matters of common interest to most or all unit owners. As the statue clearly states, it is more than the "common elements" for which Plaintiffs may initiate a lawsuit. Indeed common elements are only one of a long list of unlimited items that the Association may sue for. The statute reads in relevant part:

> After control of the association is obtained by unit owners other than the developer, **the association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all unit owners concerning matters of common interest to most or all unit owners, <u>including, but not limited to</u>** the common elements; the roof and structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving an improvement or a building; representations of the developer pertaining to any existing or proposed commonly used facilities; and protesting ad valorem taxes on commonly used facilities and on units; and may defend actions in eminent domain or bring inverse condemnation actions. If the association has the authority to maintain a class action, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action.

6

(E.s.). Thus, simple rules of statutory construction and the plain language of the statute, "including, but not limited to" show that Plaintiffs have standing to bring a lawsuit for much more than the common elements. In fact, by a plain reading of the statute the list of what the Plaintiffs may sue for is only limited by "**matters of common interest to most or all unit owners…**" surely, the individual units and contents of those units are of a common interest to most or all unit owners. Moreover, Plaintiffs have pled that this is a matter of "common interest"[3] to all unit owners, which must be taken as true. Am. Compl. ¶¶11-16. Defendant's argument must be rejected.

*Bonavista Condo. Assoc. v. Bystrom,* 520 So.2d 84, 86 (Fla. 3d DCA 1988) cited to by Defendant is no longer good law and has been expressly overruled by statute:

> **Similarly we interpret the amendment to overrule the third district's holding in *Bonavista Condominium Ass'n v. Bystrom*, 520 So.2d 84 (Fla. 3d DCA 1988),** in which the third district held the taxpayers/individual unit owners to be indispensable parties as a result of a pari materia reading of sections 194.181 and 718.111(3), Florida Statutes (Supp.1986)").

(E.s). *Brazilian Court Hotel Condo. Owners Ass'n., Inc. v. Walker,* 584 So.2d 609, 612 (Fla. 4th DCA 1991). *Bystrom* involved a condominium association's protest of ad valorem taxes on individual condominium units. *Bystrom* held that Florida Statutes section 194.181 required that the taxpayer themselves, meaning the individual unit owner, must be joined as a party and were indispensable parties to the lawsuit as was the Florida Department of Revenue.

Defendant also fails to mention that the Association's complaint in *Bystrom* "did not allege that the assessment challenge was <u>based on matters of common interest</u> to all unit

---

[3] Defendant is asking the Court to make factual findings as to what a "common interest" is, inappropriate on a motion to dismiss. The damage to the unit owners' property that the Associations have standing for comes from the absolute obligations the Associations have to maintain and repair defects in the Common Elements of the property. The defective CPCV is a common element. To access the CPVC pipes, parts and fittings, the Associations must rip and tear unit owners' drywall and finishes all at the Associations' expense. The Association has the right to recover those costs. The Association also must pay for fire watch or living expenses if unit owners cannot use their units during the repair due to defects in Common Elements. At both Projects there has been damage caused by the defective pipes and the Association has either paid for repairs and/or is subject to future claims for failure to repair a "known defect."  The issue involves a common problem to all unit owners, not just one or two. Each unit owner has to contribute to the costs because it arises from a Common Element. Thus, this is a matter of common interest to most, if not all unit owners.

owners." *Bystrom,* 520 So.2d at 86 (e.s.). The Association in *Bystrom* had a glaring pleading deficiency that Plaintiffs here do not have making *Bystrom* distinguishable. Here, Plaintiffs clearly pled a common interest. Moreover, *Bystrom* concerned ad valorem tax assessments and not products liability, warranty and unfair and deceptive trade practices act claims like the ones presented here. Thus, *Bystrom* is of no assistance to Defendant.

### IV. Plaintiff states a valid FDUTPA claim as a "deceptive" or "unfair practice." An "unfair practice" is defined as one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious."

Defendant argues that Plaintiffs failed to plead a deceptive act or unfair practice. Defendant is wrong because Plaintiffs have properly pled the deceptive act or unfair practice as:

> Defendant's acts and omissions, as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

Am. Compl. ¶358. Plaintiffs' FDUTPA count also adopted by reference its allegations in the Complaint that: a) the fire suppression systems have failed and my allow fires to burn out of control endangering lives and property, *id. at* ¶2; b) the defects could have been prevented had Defendant revealed the defects, timely fixed or adequately warned Plaintiffs, *id.* at ¶5; c) the defects were foreseeable, *id.* at ¶150; and d) that the damaged caused by the defective pipes will be substantial, *see id.* at ¶156-159. Plaintiffs' allegations comport with the Florida Supreme Court's opinion in *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003)[4] of what constitutes an "unfair practice." *PNR* defined an "unfair practice" as one that is "substantially injurious to consumers." *Id.* At a minimum, Defendant's CPVC pipes, parts and fittings are "substantially injurious to consumers" given their propensity to fail, damage property and to cause life/safety issues. It is also patently unfair or deceptive for Plaintiffs to have received a defective product when Defendant knew or should have known of the defects and failed to warn of them. Plaintiffs agree that FDUTPA allows claims for "actual damages" and have pled as such in paragraphs 361 and 361(d) Plaintiffs' Amended Complaint.

### V. Defendant impermissibly asks the Court to make a factual determination at this stage that it is not a "supplier" pursuant to Fla. Stat. § 718.203.

---

[4] Holding that FDUTPA applied to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract.

Defendant is attempting to convert its Motion to Dismiss into a Motion for Summary Judgment and have the Court make factual determinations without any factual record as to whether Defendant is in fact a "supplier" that owes Plaintiffs an implied warranty of fitness under Florida Statutes section 718.203.[5] Defendant seems to forget that on a Motion to Dismiss the Court must accept all of Plaintiffs' allegations as true. Plaintiffs have properly alleged that Defendant is a supplier of CPVC pipe." Am. Compl. ¶363. Plaintiffs consistently pled Defendant was a supplier of CPVC throughout the statutory warranty count. Compl. ¶363, 368-369.

Defendant's argument to dismiss the statutory warranty count on the basis that it is a "distributor" rather than a "supplier," is even more egregious when the statute itself does not define what a "supplier" is. *See* Fla. Stat. §718.203(2) (neither this section nor Ch. 718 provide a definition of "supplier"). The only guidance from caselaw on what a "supplier" is comes from *Port Marina Condo. Assoc. v. Roof Servs., Inc.,* 119 So.3d 1288, 1290-91 (Fla. 4th DCA 2013). Defendant cites to *Port Marina,* but glosses over the fact that absent a statutory definition, the *Port Marina* court looked to Black's Law Dictionary (2009) and found that Black's Law Dictionary defines "supplier" as a "person engaged, directly or indirectly, in the business of making a product available to consumers." *Port Marina*, 119 So.3d at 1290-91. As alleged by Plaintiffs, Defendant's CPVC pipes and fittings are in the Projects. Compl. ¶45. Thus, Defendant was engaged "directly or indirectly, in the business of making a product available to consumers." Here, the consumers were Plaintiffs. Plaintiffs adequately pled Defendant was a "supplier" within the meaning of section 718.203. For the purpose of a Motion to Dismiss, all of Plaintiffs' allegations must be taken as true. Accordingly, the Motion to Dismiss the section 718.203 statutory warranty count must be denied.

As to Plaintiffs' claim for violation of Florida Statutes section 553.84, the Florida Building Code, as to this Defendant and as to this Count only, Plaintiffs withdraw the claim.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs request that the Court enter an order denying Defendant's Motion to Dismiss.

Dated: April 25, 2016.

---

[5] Judge John Thornton denied a motion to dismiss brought by Defendants in the *2711* case on the same basis, Ex. A, attached hereto.

        SIEGFRIED, RIVERA, HYMAN, LERNER,
DE LA TORRE, MARS & SOBEL, P.A.
*Attorneys for Plaintiffs*
201 Alhambra Circle, Suite 1102
Coral Gables, Florida 33134
Phone: (305) 442-3334
Fax: (305) 443-3292
Email: ahale@srhl-law.com
ssiegfried@srhl-law.com
ssobel@srhl-law.com

By: /s/ Steven M. Siegfried
Steven M. Siegfried, Esq.
Florida Bar Number: 208851
Stuart Sobel, Esq.
Florida Bar Number:
Alton C. Hale, Jr., Esq.
Florida Bar Number: 987190

COLSON HICKS EIDSON GONZALEZ
MARTINEZ KALBAC & KANE
*Attorneys for Plaintiffs*
255 Alhambra Circle, PH
Coral Gables, Florida 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Email: ervin@colson.com
patrick@colson.com

By: /s/ Ervin A. Gonzalez
Ervin A. Gonzalez, Esq.
Florida Bar Number: 500720
Patrick S. Montoya, Esq.
Florida Bar Number: 524441

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF on April 25, 2016, on all counsel of record on the service list below.

**Eric Stephen Boos**
**Daniel Brandon Rogers**
Shook Hardy and Bacon LLP
201 S Biscayne Blvd Ste 3200
Miami, FL 33131
3053585171

Email: eboos@shb.com
droghers@shb.com

**Fredrick Howard Lebron McClure**
**J. Trumon Phillips**
DLA Piper LLP (US)
100 N. Tampa Street
Suite 2200
Tampa, FL 33602
813-229-2111
Fax: 813-229-1447
Email: fredrick.mcclure@dlapiper.com
trumon.phillips@dlapiper.com

**Harout Jack Samra**
DLA Piper LLP (US)
200 S Biscayne Blvd
Suite 2300
Miami, FL 33131
(305) 423-8534
Fax: (305) 437-8131
Email: harout.samra@dlapiper.com

**Alan Gary Kipnis**
**Jeffrey Brian Shapiro**
**Andrea Cox**
**Steven Myer Appelbaum**
Arnstein & Lehr
200 E Las Olas Boulevard
Suite 1700
Fort Lauderdale, FL 33301
Email: agkipnis@arnstein.com
jbshapiro@arnstein.com
acox@arnstein.com
smappelbaum@arnstein.com

**Anne M. Rodgers**
**Barclay Nicholson**
**Carter W. Dugan**
Norton Rose Fulbright, US, LLP
Fulbright Tower
1301 McKinney
Suite 500
Houston, TX 77010-3095
713-651-5151

Email: anne.rodgers@nortonrosefulbright.com
Barclay.Nicholson@nortonrosefulbright.com
carter.dugan@nortonrosefulbright.com

**Gregory J. Wartman**
Saul Ewing, LLP
1500 Market Street
38th Floor
Philadelphia, PA 19102-2186
215-972-7548
Email: gwartman@saul.com

**Jacob J Liro**
**William Frederick Fink**
Wicker, Smith, O'Hara, McCoy & Ford, P.A.
2800 Ponce De Leon Blvd, Suite 800
Coral Gables, FL 33134
(305)448-3939
Email: jliro@wickersmith.com
wfink@wickersmith.com

**Armando Gustavo Hernandez**
Rumberger, Kirk and Caldwell, PA
80 SW 8th Street Suite 3000
Miami, FL 33130
786-472-0019
Email: ahernandez@rumberger.com
ssarason@rumberger.com

**Adam Alaee**
Foley & Lardner
100 N Tampa Street
Suite 2700 PO Box 3391
Tampa, FL 33601-3391
813-229-2300
Fax: 221-4210
Email: aalaee@foley.com

**Andrew Samuel Connell , Jr.**
Litchfield Cavo
600 Corporate Drive
Suite 600
Fort Lauderdale, FL 33334
954-689-3023
Fax: 954-689-3001
Email: connell@litchfieldcavo.com

**David R. Stechow**
Plunkett Cooney
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4000
Email: DStechow@plunkettcooney.com

**Alan Mirelman**
Ringer, Henry, Buckley & Seacord, P.A.
14 East Washington Street
Suite 200
Orlando, FL 32801
407-841-3800
Email: amirelman@ringerhenry.com

**Cindy Duque Bonilla**
WEINBERG WHEELER HUDGINS GUNN DIAL
255 South Orange Avenue Suite 1260
Orlando, FL 32801
407-734-7000
Email: cbonilla@wwhgd.com

**Michael Alan Hornreich**
Weinberg Wheeler Hudgins Gunn Dial
2601 S. Bayshore Dr.
Suite 1500
Miami, FL 33133
(305) 455-4509
Email: mhornreich@wwhgd.com